IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GARY SHUMATE and<br>ALISA SHUMATE<br>    Plaintiffs, | : | |
| | : | CIVIL ACTION |
| v. | | NO. 13-6610 |
| BRIAN MATURO;<br>MICHAEL VOETELINK;<br>PENNSYLVANIA STATE POLICE and<br>COMMONWEALTH OF PENNSYLVANIA<br>    Defendants. | :<br><br><br>: | |

## MEMORANDUM

**Jones, II, J.**                                                                                              **October 15, 2014**

### I.     INTRODUCTION

   Plaintiff Gary Shumante brings the above-captioned action, alleging that Defendants violated state and federal laws by utilizing excessive force while arresting him.  His wife, Alisa Shumante, brings a state law claim for loss of consortium.  Now pending before this Court is Defendants' Motion to Dismiss Plaintiffs' Complaint. For the reasons set forth below, said Motion shall be granted.[1]

### II.    FACTS

   On November 19, 2011, at approximately 12:45 A.M., Plaintiff Gary Shumate was stopped by Troopers Brian Maturo and Michael Voetelink, while operating his vehicle on Route 202 in

---

[1]  This Court notes that Plaintiffs initially failed to respond to Defendants' Motion to Dismiss within the time allotted by rule.  This Court issued a rule to show cause as to why the motion should not be granted as unopposed, prompting Plaintiffs to file a Response.

1

Chadds Ford Township, Delaware County, Pennsylvania.  (Compl. ¶ 10.)  Troopers Maturo and Voetelink are employed by the Pennsylvania State Police.  (Compl. ¶¶ 5-6.)

The Troopers asked Mr. Shumate to exit his vehicle and to perform a series of field sobriety tests.  (Compl. ¶¶ 11-12.)  They subsequently arrested Mr. Shumate for suspicion of driving under the influence of alcohol.  (Compl. ¶ 13.)  At the time of his arrest, Troopers Maturo and Voetelink placed metal handcuffs on Mr. Shumate's wrists.  (Compl. ¶ 14.)  Mr. Shumate alleges that the handcuffs were fastened too tightly behind his back and he immediately experienced extreme pain.  (Compl. ¶¶ 14-15.)  He further alleges that he expressed his discomfort to the Troopers, but they refused to aid him.  (Compl. ¶¶ 16-17.)  Mr. Shumate was then placed in the rear seat of the Troopers' patrol car and was allegedly forced to sit on top of his handcuffed wrists.  (Compl. ¶ 17.)  He claims that he notified the Troopers a second time of his discomfort.  (Compl. ¶ 18.)

Troopers Maturo and Voetelink transported Mr. Shumate to a hospital for blood work and then processed him at the Pennsylvania State Police barracks in Media, Pennsylvania.  (Compl. ¶ 19.)  Mr. Shumate was released from custody at 3:30 A.M., that same day.  (Compl. ¶ 20.)

Mr. Shumate further alleges that later the same day, he complained to his friends, Mr. Christopher Cabott and Mr. Donald Terry Moore, Jr., that his left wrist was in extreme pain, caused by the metal handcuffs used during his arrest.  (Compl. ¶¶ 23, 25.)  Mr. Shumate did not seek medical treatment for his wrist immediately, but instead claims he "took great care to avoid using his left wrist and arm so as to allow it to heal."  (Compl. ¶ 26.)

Seven months after the handcuffs were placed on his wrists, Mr. Shumate sought the advice of a friend who was a physician's assistant, about his alleged wrist pain.  (Compl. ¶ 27.)  The friend advised Mr. Shumate to seek medical treatment.  (Compl. ¶ 29.)  Mr. Shumate did so on

an unspecified date, at which time he was diagnosed with a bone fracture and torn ligament in his left wrist, which he attributes to the alleged excessive force used by Troopers Maturo and Voetelink during the course of his arrest in November 2011.  (Compl. ¶ 30.)  More than one year after the incident, Plaintiff underwent surgery on his left wrist, followed by physical therapy. (Compl. ¶¶ 31-32.)  Mr. Shumate claims he still experiences pain in his wrist from floating bone chips and permanent swelling, thereby prompting initiation of this suit nearly two years later, on November 13, 2013.  (Compl. ¶ 33.)  In particular, Mr. Shumate alleges the Commonwealth of Pennsylvania, the Pennsylvania State Police, and Troopers Maturo and Voetelink, violated his Fourth Amendment rights pursuant to 42 U.S.C. § 1983 by utilizing excessive force.  He raises state law claims for assault and battery, as well as negligence.  (Compl. ¶¶ 34-48, 52-54.)  Mrs. Shumate is suing for loss of consortium.  (Compl. ¶¶ 55-57.)  Defendants herein have moved to dismiss these claims on the bases of sovereign immunity and failure to state a claim.  (Doc. No. 4.)

### III. LEGAL STANDARD

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation and citation omitted).  After the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Id*. at 678 (citing *Twombly,* 550 U.S. at 556).  This standard, which applies to all civil cases, "asks for more

than a sheer possibility that a Defendant has acted unlawfully." *Id.* at 678; accord *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) ("All civil complaints must contain more than an unadorned, the-Defendant-unlawfully-harmed-me accusation.") (internal quotation omitted).

In addition to seeking dismissal on the basis of failure to state a claim under Rule 12(b)(6), Defendants have also moved to dismiss the Plaintiffs' 42 U.S.C. § 1983 claim under Rule 12(b)(1), asserting Eleventh Amendment immunity. "[T]he Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n. 2 (3d Cir. 1996) (citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984)).  A plaintiff may properly raise Eleventh Amendment immunity in a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). *Id.* This Rule 12(b)(1) motion constitutes a facial challenge, as it concerns an alleged pleading deficiency. When assessing a facial challenge, the court is restricted to a review of the allegations of the Complaint and any documents referenced therein. *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008); *Gould Elec. Inc. v. U.S.*, 220 F.3d 169, 177 (3d Cir. 2000). As is the case with a 12(b)(6) motion, "the trial court must consider the allegations of the complaint as true." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

IV. **DISCUSSION**

   A. **Section 1983 Claims**

      i. **Official Capacity**[2]

Under Section 1983 of Title 42, individuals are provided with a civil remedy for deprivation of their rights by any "person" acting under the color of law. 42 U.S.C. § 1983. Neither States nor arms of the state are "persons" under Section 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989). In determining whether an entity constitutes an arm of the state, a court must consider "(1) whether, in the event the plaintiff prevails, the payment of the judgment would come from the state . . . ; (2) the status of the agency under state law . . . ; and (3) what degree of autonomy the agency enjoys." *Peters v. Del. River Port Auth. of Pa. and N.J.*, 16 F.3d 1346, 1350 (3d Cir. 1994).

The Pennsylvania State Police is a "department or agency of the state having no existence apart from the state." *Altieri v. Evanko*, No. Civ. No. 98-5495, 2000 U.S. Dist. LEXIS 5041, at *16 (E.D. Pa. 2000). "As an arm of the state, the state police are entitled to any 11th amendment immunity to which the Commonwealth is entitled." *Id.*

A "suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will*, 491 U.S. at 71 (citation omitted). "As such, it is no different from a suit against the State itself." *Id.* (citation omitted). State officials, acting in their official capacity, are not "persons" under Section 1983. *Id.*

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of

---

[2] Plaintiffs' Complaint states that both Troopers are sued in their individual capacities and it states that the Section 1983 claim is brought against all the Defendants, "individually and as well as in their official capacities." (Compl. ¶¶ 5-6, 41.) Accordingly, this Court will address both individual and official capacity liability.

the United States . . . ." U.S. Const. Amend XI.  This amendment protects any unconsenting state from suit in federal court.  *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984).  A state may waive this immunity and consent to suit.  *Clark v. Barnard*, 108 U.S. 436, 447 (1883).  However, consent must be unequivocally given.  *Edelman v. Jordan*, 415 U.S. 651, 673 (1974).  Additionally, Congress may specifically abrogate the states' Eleventh Amendment immunity, but it did not do so when it enacted 42 U.S.C. § 1983.  *Quern v. Jordan*, 440 U.S. 332, 338 (1979).  *See also Christ the King Manor, Inc. v. Sec'y United States HHS,* 730 F.3d 291, 318 (3d Cir. 2013) ("[U]nless Congress has 'specifically abrogated' the states' sovereign immunity or a state has unequivocally consented to suit in federal court, [said courts] lack jurisdiction to grant relief in [suits brought by a state's own citizen].").

In view of the foregoing, Defendants' Motion to Dismiss with respect to Plaintiff Gary Shumante's Section 1983 claims against the Commonwealth and the Pennsylvania State Police shall be granted.  The Commonwealth of Pennsylvania is not a "person" within the definition of the statute, and it has not given express consent to the suit.  42 Pa. Cons. Stat. Ann. § 8522.  The same applies to the Pennsylvania State Police, as an arm of the state.  *See Walters v. Pa. State Police*, Civ. No. 13-2275, 2014 U.S. Dist. LEXIS 111414, at *12 (M.D. Pa. July 7, 2014) (finding the 11th Amendment to be a jurisdictional bar to claims brought against the Pennsylvania State Police).

In this case, Plaintiffs' claims against Troopers Maturo and Voetelink in their official capacities are effectively suits against their office.  Accordingly, said claims shall similarly be dismissed.  *See Atkin v. Johnson,* 432 F. App'x 47, 48 (3d Cir. 2011) (concluding that the Eleventh Amendment barred a plaintiff's Section 1983 suit against the Pennsylvania State Police and a trooper sued in his official capacity) (citing *Capogrosso v. Supreme Court of N.J.*, 588

6

F.3d 180, 185 (3d Cir. 2009); *Will*, 491 U.S. at 71); *Kintzel v. Kleeman*, 965 F. Supp. 2d 601, 605 (M.D. Pa. 2013) (dismissing claims against state trooper sued in his official capacity on the basis that "[t]he Eleventh Amendment to the United States Constitution bars damages claims against both state agencies that do not waive sovereign immunity and state agencies' employees sued in their official capacity.") (citing *Will*, 491 U.S. at 71); *Dec v. Pa. State Police*, Civ. No. 12-565, 2012 U.S. Dist. LEXIS 173727, at *17 (W.D. Pa. Dec. 7, 2012) (dismissing claims against state troopers because "[a] suit against a police officer in his official capacity is 'no different from a suit against the State itself,' and is also prohibited.") (citing *Will*, 491 U.S. at 71).

### ii. Individual Capacity

The only remaining § 1983 claims to consider are those against Troopers Maturo and Voetelink, in their individual capacities.[3]

"When a defendant is sued in his individual capacity, it means that the plaintiff is 'seeking to impose individual liability upon a government officer for actions taken under color of state law.'"  *Revak v. Lieberum*, Civ. No. 08-691, 2009 U.S. Dist. LEXIS 34691, at *7 (W.D. Pa. Apr. 23, 2009) (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). "[S]tate officials, sued in their individual capacities, are 'persons' within the meaning of § 1983.  The Eleventh

---

[3] In Paragraph 41 of their Complaint, Plaintiffs recite language taken directly from Section 1983 as support for their claim that "Defendants, individually and as well as in their official capacities, separately and in concert" violated their constitutional rights.  To the extent Plaintiffs' Complaint might purport to bring a Section 1983 claim against the Commonwealth of Pennsylvania and the Pennsylvania State Police in their "individual capacities," the same must fail. *See Arnold v. New Jersey*, 03-CV-3997, 2007 U.S. Dist. LEXIS 33982, at *8-9 (D.N.J. May 9, 2007) (dismissing federal claims against several state agencies, including the Division of the State Police because "[a] suit against these entities is in effect a suit against the State. None of these agencies have consented to suit in federal district court. Accordingly, [they] are entitled to Eleventh Amendment immunity."); *Small v. Pennsylvania State Police*, Civ. No. 84-2310, 1990 U.S. Dist. LEXIS 4837, at *8 (E.D. Pa. Apr. 23, 1990) ("[T]he Eleventh Amendment bars recovery against the Pennsylvania State Police.").  Aside from individually naming Troopers Maturo and Voetelink, Plaintiffs have not directed their Section 1983 claim to any state official(s) from the Commonwealth or Pennsylvania State Police.

Amendment does not bar such suits, nor are state officials absolutely immune from personal liability under § 1983 solely by virtue of the 'official' nature of their acts." *Hafer*, 502 U.S. at 31. "[W]hen a state officer acts under a state law in a manner violative of the Federal Constitution, he 'comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character.'" *Scheuer v. Rhodes*, 416 U.S. 232, 237 (1974) (quoting *Ex parte Young*, 209 U.S. 123, 159-60 (1908)). To "establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law caused the deprivation of a federal right." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

"[E]xcessive force in the course of an arrest is properly analyzed under the Fourth Amendment." *Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999). "To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable." *Id.* "[T]he question is whether the officers' actions were 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Johnson v. Watson*, 113 F. App'x 482, 486 (3d Cir. 2004) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)).

Placement of excessively tight handcuffs and failure to respond in a timely fashion to the arrestee's pleas to loosen the handcuffs can constitute excessive force under certain circumstances. *Kopec v. Tate*, 361 F.3d 772, 777 (3d Cir. 2004). However, when an officer has no knowledge of an arrestee's distress caused by tight handcuffs, an excessive force claim fails. *Gilles v. Davis*, 427 F.3d 197, 207 (3d Cir. 2005). The Third Circuit has also refused to find excessive force when a serious injury could not be demonstrated, despite the plaintiff's numerous objections to tight handcuffs. *Johnson v. Watson,* 113 F. App'x 482, 486 (3d Cir. 2004).

Construing the Complaint in a light most favorable to Plaintiffs, Mr. Shumate has failed to state a plausible excessive force claim against Troopers Maturo and Voetelink, in their individual capacities.  Establishing a standard by which the Court must evaluate the Troopers' conduct under the circumstances, the Third Circuit has cautioned that the decision in *Kopec* was not intended to "open the floodgates to a torrent of handcuff claims." *Kopec*, 361 F.3d at 777. In this case, Mr. Shumante alleges that immediately after the handcuffs were fastened behind his back, he told the Troopers he was in "extreme pain" and requested that they loosen them. (Compl. ¶ 16.)  He further alleges the troopers ignored his request and placed him in the back of their patrol car.  (Compl. ¶ 17.)  After he was placed in the patrol car, Mr. Shumante claims that he once again requested that the troopers loosen his handcuffs. (Compl. ¶ 18.)  Unlike the situation in *Kopec*, Plaintiff herein did not begin to faint or fall to the ground from pain.  He didn't tell the troopers he was losing feeling in his hand.  He did not moan from excruciating pain.  Moreover, when Mr. Shumante after being transported to the hospital to have his blood drawn shortly after his arrest, he never told anyone at the hospital he was in any discomfort despite the "extreme pain" he was allegedly suffering from.  (Compl. ¶ 19.)  He similarly does not claim that he told anyone at the PSP Media Barracks that he was in any discomfort after being taken there for processing.  (Compl. ¶ 19.)

Mr. Shumante went home that same morning (the entire process – including the pre-arrest time for field sobriety testing – took less than three hours) and, again, did not go to a doctor. When he did finally elect to seek "advice" regarding his left wrist <u>seven months later,</u> he did not go to a doctor or hospital – he "consulted with a friend" who was a physician's assistant. (Compl. ¶ 27.)  It was only "thereafter," that Gary Shumante went to a doctor . . . ***at least*** seven months after the handcuffs were placed on his wrists.  (Compl. ¶ 30.) Treatment did not occur

9

until more than a year thereafter.  (Compl. ¶ 31.) *See also, Gilles,* 427 F.3d at 208 (finding insufficient evidence of excessive force by handcuffing where "[u]nlike *Kopec*, where the plaintiff fell to the ground and fainted with pain, obvious visible indicators of Gilles' pain were absent (other than his alleged complaint that the handcuffs were too tight)" and Plaintiff only sought an "independent medical evaluation" 2½ years later); *Leibner v. Borough of Red Bank Police Dep't*, Civ. No. 12-4104, 2013 U.S. Dist. LEXIS 33713, at *44 (D.N.J. Mar. 12, 2013) (dismissing complaint where "Plaintiff has not alleged or stated that he was in obvious discomfort or pain, that he sustained any injuries other than 'marks,' or that he needed treatment for any complications relating to his being handcuffed."); *Lassoff v. New Jersey*, Civ. No. 05-2261, 2008 U.S. Dist. LEXIS 25960, at *32-33 (D.N.J. Mar. 31, 2008) (granting judgment for defendant regarding plaintiff's excessive force by handcuffing claim "where 'obvious visible indicators' of pain were absent, and the handcuffed arrestee did not seek or receive any medical treatment.") (citing *Gilles,* 427 F.3d at 207-08); *Davis v. Bishop*, Civ. No. 05-583, 2006 U.S. Dist. LEXIS 70998, at * 13-15 (D. Del. Sept. 29, 2006) (dismissing excessive force by handcuffing claim where Plaintiff gave no indication to police officer that the cuffs were too tight, there were no signs of visible pain, and Plaintiff did not seek medical treatment but alleged he suffered nerve damage from the incident).

      Viewing the Complaint in a light most favorable to Plaintiffs at this stage of the proceedings, Plaintiffs have failed to sufficiently demonstrate that Defendants Maturo and Voetelink's actions were not "objectively reasonable" in light of the facts and circumstances confronting them.  Moreover, this Court notes that although not dispositive of the issue, the extraordinary delay in seeking a bona fide medical examination of his wrist(s) negates any inference that the left wrist issue Mr. Shumante was treated for more than a year after his arrest

was the result of allegedly tight handcuffs on the morning of November 19, 2011. *See Iqbal,* 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense . . . where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'—'that the pleader is entitled to relief.'") (citing Fed.R.Civ.P. 8(a)(2)).   Plaintiffs herein have failed to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and have not provided this Court with "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678.  Accordingly, Defendants' Motion to Dismiss shall be granted with respect to this claim.

### B. State Law Claims

Because Plaintiffs have failed to state a plausible cause of action under Section 1983, this Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims.  The same shall be dismissed without prejudice to raise them in state court.

### V. CONCLUSION

For the reasons set forth hereinabove, Defendants' Motion to Dismiss shall be granted. Although Plaintiff alternatively asks for leave to amend in the event this Court grants Defendants' Motion, amendment would be futile.  No additional pleading can cure the defects regarding Plaintiffs' Section 1983 claim.  Plaintiff Gary Shumante showed no visible signs that he was in distress as a result of the handcuffs used by Defendants Maturo and Voetelink the morning of November 11, 2011.  The basis for his arrest that morning was intoxication. Although Mr. Shumante claims the Troopers failed to respond to his alleged protestations that the handcuffs were too tight, the absence of any visible signs of actual pain or discomfort leads

this Court to conclude that under the circumstances, the Troopers acted reasonably. This is borne out by the fact that when Mr. Shumante was transported to the hospital shortly after his arrest, he never indicated to any medical personnel at the hospital that he was in pain, as well as by the fact that Mr. Shumante waited more than seven months to even seek the "advice" of a friend regarding the alleged pain he felt in his left wrist.  The existence of these facts precludes a finding that the manner in which the Troopers used handcuffs on Mr. Shumante was not objectively reasonable, thereby precluding survival of a Section 1983 claim for excessive force under the Fourth Amendment.

An appropriate Order follows.

BY THE COURT:

/s/ C. Darnell Jones, II

C. Darnell Jones, II      J.